UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KENNETH SIMS,
    Plaintiff,
    v.                              Case No. 3:16cv1589 (WWE)

NANCY BERRYHILL, Commissioner
Of Social Security,
    Defendant.


**MEMORANDUM OF DECISION ON THE MOTION FOR ORDER REVERSING OR REMANDING COMMISSIONER'S DECISION AND THE MOTION TO AFFIRM THE FINAL DECISION**

Plaintiff Kenneth Sims challenges the denial of his application for Social Security disability benefits and requests reversal or remand of the Commissioner's decision pursuant to sentence four of 42 U.S.C § 405(g). For the following reasons, plaintiff's motion for order reversing the Commissioner's decision will be denied; and defendant's motion to affirm the decision of the Commissioner will be granted.

**BACKGROUND**

The plaintiff has filed a statement of facts and medical history that commences with plaintiff's May 1987 amputation of the left leg after a motorcycle accident. Defendant adopted plaintiff's statements with the exception of plaintiff's listing of impairments, which is a legal conclusion for the Commissioner; and plaintiff's characterization of chrondromalacia as a firm diagnosis rather than a noted impression in a treatment report by a physician assistant. Subject to these exceptions, the Court incorporates the factual statements submitted by plaintiff herein.

Plaintiff, who was born in 1967, filed a claim for disability insurance benefits on

1

March 15, 2012, alleging disability onset on October 28, 2012, due to chronic right leg swelling, depression, back pain, arthritis, ankle pain and anxiety. His claim was denied on July 15, 2013, and upon reconsideration on November 5, 2013. On October 29, 2014, a hearing took place before an Administrative Law Judge ("ALJ"), with plaintiff represented by counsel. On January 12, 2015, the ALJ denied plaintiff's claim for disability benefits in a written ruling that found plaintiff had the severe impairments of status post amputation of the lower extremity, affective disorder and substance addiction disorder; but that plaintiff did not have an impairment or combination thereof that met or medically equaled any of the Agency's listed impairments. The ALJ determined that plaintiff had residual functional capacity ("RFC") to perform a range of sedentary work.[1] The ALJ found that plaintiff's range of sedentary work was limited by his ability to stand and walk a maximum of four hours in an eight-hour workday; to climb ramps and stairs occasionally; never climb ladders ropes or scaffolds; kneel, crouch and crawl occasionally. He found that plaintiff could balance frequently and perform simple work tasks but he could no longer perform his past relevant work. In finding that plaintiff could perform jobs that existed in the national economy, the ALJ noted that a vocational expert had testified that a person of plaintiff's same age, education, vocational background and his RFC could perform jobs such as order clerk, information clerk, and

---

[1] 20 C.F.R. § 404.1567(a) describes sedentary work as involving lifting no more than ten pounds at a time, sitting approximately six hours of an eight-hour day, and occasionally walking and standing. See SSR 96-9p. See Burns v. Commissioner of Social Security, 2017 WL 2334326, at *6 (N.D.N.Y.) ("Sedentary work requires the abilities to sit for six hours, stand and walk for two hours, and lift or carry up to ten pounds in an eight-hour workday.").

cashier.  However, the ALJ recognized that plaintiff "is able to perform less than the full range of sedentary work, as he has difficulty carrying objects due to his use of a cane."

The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on August 3, 2016.

**DISCUSSION**

In reviewing a final decision of the Commissioner under 42 U.S.C. §§ 405(g) and 1383(c), the district court performs an appellate function. Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981); Igonia v. Califano, 568 F.2d 1383, 1387 (D.C. Cir. 1977). A reviewing court will "set aside the ALJ's decision only where it is based upon legal error or is not supported by substantial evidence." Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). See also Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)("As a general matter, when we review a decision denying benefits under the Act, we must regard the [Commissioner's] factual determinations as conclusive unless they are unsupported by substantial evidence"). "Substantial evidence" is less than a preponderance, but "more than a scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Consol.  Edison Co. v. NLRB, 305 U.S. 197, 229 (1938); see Yancey v. Apfel, 145 F.3d 106, 110 (2d Cir. 1998); Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).

In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951). In so doing, the Court must "review the record as a whole."  New York v. Sec'y of Health and Human Servs., 903 F.2d 122, 126 (2d Cir.

3

1990). The ALJ need not "reconcile every conflicting shred of medical testimony." Miles v. Harris, 645 F.2d 122, 124 (2d Cir.1981).

The regulations promulgated by the Commissioner establish a five-step analysis for evaluating disability claims. Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner considers if the claimant is, at present, working in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(I). If not, the Commissioner next considers if the claimant has a medically severe impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the severity requirement is met, the third inquiry is whether the impairment is listed in Appendix 1 of the regulations or is equal to a listed impairment. 20 C.F.R. § 416.920(a)(4)(iii); Pt. 404, Subpt. P. App. 1. If so, the disability is granted. If not, the fourth inquiry is to determine whether, despite the severe impairment, the claimant's residual functional capacity allows him or her to perform any past work. 20 C.F.R. § 416.920(a)(4)(iv). If a claimant demonstrates that no past work can be performed, it then becomes incumbent upon the Commissioner to come forward with evidence that substantial gainful alternative employment exists which the claimant has the residual functional capacity to perform. 20 C.F.R. § 416.920(a)(4)(v). If the Commissioner fails to come forward with such evidence, the claimant is entitled to disability benefits. Alston, 904 F.2d at 126.

When the reviewing court has "no apparent basis to conclude that a more complete record might support the Commissioner's decision," it may remand for the sole purpose of calculating benefits. Butts v. Barnhart, 399 F.3d 277, 385–86 (2d Cir. 2004). However, the reviewing court may remand the matter to allow the ALJ to further develop the record, make more specific findings, or clarify his or her rationale. See Grace v.

Astrue, 2013 WL 4010271, at *14 (S.D.N.Y.); see also Butts, 399 F.3d at 385–86. Plaintiff claims that the ALJ erred by assigning great weight to the opinions of the non-examining state agency experts Drs. Maria Lorenzo, Angelina Jacobs, and Janine Swanson, and by affording little weight to the opinions of plaintiff's treating physicians and sources, Drs. Babu Kumar and Brian Coyle and Nurse Practitioner Suni Jacob. Plaintiff also asserts that the ALJ erred in his consideration of the listing impairments and in his assessment of plaintiff's credibility.

Defendant counters that the ALJ accorded proper weight to medical sources; that the ALJ's findings with regarding to plaintiff's listing impairments and RFC were supported by substantial evidence, and that the ALJ properly assessed plaintiff's credibility.

**Treating Source Rule**

The Court must determine whether the ALJ applied the correct standards when he accorded substantial weight to the non-examining medical opinions but little or no weight to the treating medical source opinions.

Pursuant to the treating source rule, the Commissioner is to give controlling weight to a treating source's opinion if (1) it is well supported by clinical and laboratory diagnostic techniques, and (2) the opinion is not inconsistent with other substantial evidence in the case record. Thompson v. Barnhart, 75 Fed. Appx. 842, 845 (2d Cir. 2003); 20 C.F.R. § 416.927(a)(2); 20 C.F.R. § 404.1527(c). Where the opinion is contradicted by other substantial evidence in the record, the ALJ is entitled to use discretion in weighing the medical evidence as a whole. Veino v Barnhart, 312 F.3d 578, 587 (2d Cir. 2002). In resolving the amount of weight to give a medical opinion,

5

the ALJ should consider the examining relationship; the treatment relationship, the length of the treatment relationship, the nature and extent of the treatment relationship; the evidence supporting the medical opinion; consistency with the record; and specialization of the medical source. See 20 C.F.R. §§ 404.1527 and 416.927. The ALJ must provide a reason for any rejection of a treating source opinion. Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir. 1993); see Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (To override opinion of treating physician, ALJ must explicitly consider treating physician factors).

"The relevant inquiry is whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence;" there is no basis for remand where the ALJ's analysis "affords an adequate basis for meaningful judicial review." Cichocki v. Astrue, 729 F.3d 172, 177-78 (2d Cir. 2013); see Mullings v. Colvin, 2014 WL 6632483, at *14 (E.D.N.Y. 2014) (ALJ must articulate specific reasons for the weight given to plaintiff's treating physicians and develop the record as necessary to accord proper weight to medical opinions). The ALJ must properly analyze the reasons that the report is rejected; an ALJ cannot arbitrarily substitute his or her own judgment for competent medical opinion. Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999).

Plaintiff's Treating Sources

Plaintiff had been treated by internal medicine providers Dr. Kumar and Nurse Jacob since 2010. In June 2013, plaintiff saw Nurse Jacobs and complained about pain to his right leg, although he denied back pain or joint swelling. On July 25, 2013, he saw

Jacobs and had an examination that was deemed normal. He had an adjustment to his prosethetic leg on July 26, 2013. On August 8, 2013, plaintiff saw Dr. Kumar and denied having headaches, leg swelling, balance issues, low back pain, numbness, tingling or gait abnormalities. On September 12, 2013, plaintiff had his prosthetic leg realigned.

Dr. Kumar referred plaintiff to Dr. Coyle, a vascular surgeon, regarding swelling in his right leg. On November 19, 2013, Dr. Coyle reported to Dr. Kumar that plaintiff "continues to suffer from significant chronic venous insufficiency and right lower extremity swelling." Dr. Coyle prescribed compression stockings and stated that "[e]levation for thirty minutes 4 times a day is a goal I encouraged him to achieve whenever possible."

In October 2013, Dr. Kumar and Nurse Jacob completed a Treating Source Statement, indicating that plaintiff would have serious problems performing daily activities, interacting with others and performing normal work activities, especially on a sustained basis of eight hours per day during a five-day week.

State Agency Medical Opinions

On July 8, 2013, Dr. Lorenzo reviewed the record evidence and determined that plaintiff could occasionally lift twenty pounds and frequently lift ten pounds; that he could stand or walk for four hours and sit for about six hours in an eight hour workday; that he could occasionally climb ramps, stairs, ladders ropes and scaffolds; that he could occasionally kneel, crouch and crawl; and that he had no manipulative, visual, communicative or environmental limitations.

On November 5, 2013, Dr. Jacobs reviewed the record evidence and determined

that plaintiff could occasionally lift twenty pounds and frequently lift ten pounds; that he could stand or walk for a total of four hours and sit for about six hours in an eight-hour work day; that plaintiff could occasionally climb ramps, stirs, ladders, ropes and scaffolds and occasionally kneel, crouch and crawl; that he could frequently balance; and that he had no manipulative, visual, communicative or environmental limitations.

On November 5, 2013, Dr. Swanson reviewed the record and determined that plaintiff had mild restrictions in activities of daily living, maintaining social functioning, concentration, persistence or pace.

ALJ Designation of Weight

The ALJ explained that he designated great weight to the opinions of the state agency nonexamining physicians, which were consistent with his findings regarding plaintiff's ability to perform sedentary work with limitations and the medical evidence record. He also indicated that he had assigned little weight to the findings of Dr. Swanson's opinion that plaintiff had mild limitations in concentration, persistence and pace; the ALJ explained that record evidence and plaintiff's testimony indicated that plaintiff's depressive symptoms limited him to performing simple work related activities.

He specified that he had assigned little weight to the opinion of Dr. Kumar and Nurse Jacob because it appeared inconsistent with other record evidence, including plaintiff's own report that his depression symptoms were generally under control and with a 2013 consultative evaluation of plaintiff by Dr. Marc Hillibrand, who found that plaintiff was alert, and had normal attention, memory and concentration. The ALJ also noted that Jacobs and Kumar were internal medicine providers with no indication that they had treated plaintiff for psychological impairment. Here, the ALJ's designation of

the weight assigned to the opinions of Jacobs and Kumar reflects consideration of the treating relationship and the relevant medical evidence.

As to the weight assigned to Dr. Coyle's November 2013 letter to Dr. Kumar, the ALJ noted that Dr. Coyle indicated that there was no surgery to correct plaintiff's problems and that he encouraged plaintiff to elevate his leg for thirty minutes four times a day. He explained that Dr. Coyle's findings were based on plaintiff's subjective complaints. Additionally, the ALJ cited to specific examples of contradictory evidence in the record, including plaintiff's own denials of leg swelling, gait abnormalities, pain-tingling or numbness in 2013.

The Court finds that the ALJ has properly applied the treating physician rule and has not arbitrarily substituted his own opinions for that of competent medical opinion.

**Listing Impairments**

Plaintiff challenges the ALJ's consideration of his impairments, particularly with regard to satisfying the Listing requirements of 1.02 (Major dysfunction of the joint) and 1.03 (Amputation). Defendant maintains that the ALJ properly found that plaintiff did not have an impairment or combination thereof that satisfied one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

A plaintiff must show that an impairment meets a listing according to all of the specified medical criteria of that listing. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). To meet the relevant listing---Listing 1.02A Major dysfunction of a joint---plaintiff must establish that he is unable "to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. Pt. 404, Subpt P, App'x1, Section 1.02A.

Inability to ambulate effectively is defined by Listing 100.B2b as "an extreme limitation of the ability to walk: *i.e.* an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning … to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities."

To meet the criteria of Listing 1.05B, a plaintiff must establish amputation of "[o]ne or both lower extremities at or above the tarsal region, with stump complications resulting in medical inability to use a prosthetic device to ambulate effectively, as defined in 1.00B2b, which have lasted or are expected to last for at least 12 months."

Plaintiff claims that his "arterial and overuse complication of the right leg" establishes an equivalence with a listing. An impairment is medically equivalent to a listing if claimant has other findings related to his impairment that are at least of equal medical significance to the required criteria. 20 C.F.R. § 404.1526.

In this instance, the record evidence indicates that plaintiff can walk without the use of a hand-held device that limits the function of both of his upper extremities. Further, plaintiff has not shown that he had complications resulting in an inability to ambulate effectively for at least twelve months. Accordingly, the Court finds that the ALJ did not err in his consideration of the Listing impairments, which finding is supported by substantial record evidence.

**Residual Functional Capacity ("RFC")**

Plaintiff argues that the ALJ erred by failing to consider his asserted

cardiomyopathy that was indicated by an EKG test; his chondromalacia; his degenerative joint disease; and his veinous insufficiency in the determination of plaintiff's sedentary work capacity.

In making an RFC determination, an ALJ should consider all of a claimant's medically-determinable impairments of which he is aware, including those that are not severe. 20 C.F.R. § 404.1545(a)(2). Plaintiff is required to demonstrate the detrimental effect of any such non severe impairments upon his functional abilities. See 20 CFR § 404.1545(a)(3). Here, plaintiff has not shown how these diagnoses have limited his functionality. In accordance with the Court's prior discussion of the record and medical opinions, the Court finds that the ALJ's RFC determination is supported by substantial evidence.

**Credibility**

Plaintiff attacks the ALJ's credibility determination on the ground that he failed to afford appropriate consideration to plaintiff's work history. The ALJ found that plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms was not credible.

The ALJ looks to the record as a whole and weighs all the evidence to make a credibility determination. SSR 96-7. The ALJ must resolve evidentiary conflicts and appraise the credibility of a witness. Wavercak v. Astrue, 420 F. App'x 91, 94 (2d Cir. 2011). "[A] good work history may be deemed probative of credibility … [but] is just one of many factors appropriately considered in assessing credibility." Id.

Here, the ALJ's credibility determination referenced plaintiff's past work history, the activities that plaintiff had described in his testimony, and the medical record

evidence. The ALJ explained that plaintiff has used his prosthetic with minimal complications other than adjustments; that the record shows minimal psychological treatment or complaints noted in the record; that plaintiff can drive, ambulate independently, perform yard work and care for his children. The ALJ also pointed out that plaintiff testified that he had stopped doing yard work or household chores, but an August 2014 treatment note indicated that he had complained of soreness after doing yard work. The Court finds no error in the ALJ's credibility determination. Accordingly, the Court will affirm the decision of the Commissioner.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion for order reversing the Commissioner's decision [doc.11] is DENIED; and the defendant's motion [doc. 12] to affirm the decision of the Commissioner is GRANTED.

The clerk is instructed to enter judgment in favor of the Commissioner and to close this case.

/s/Warren W. Eginton
Warren W. Eginton
Senior United States District Judge

Dated this 6th day of September 2017 at Bridgeport, Connecticut.